E-FILED
Friday, 26 June, 2026  04:52:59 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

ARNEISHA THOMAS-BONDS,

        Plaintiff,

    v.

CATERPILLAR INC.,

        Defendant.

Case No. 1:25-cv-01071

## MOTION FOR SUMMARY JUDGMENT

Defendant Caterpillar Inc. ("Caterpillar"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D), submits its combined Motion for Summary Judgment and Memorandum of Law in support of its Motion.

## INTRODUCTION

Plaintiff Arneisha Thomas-Bonds' ("Plaintiff") own testimony establishes that she did not have a disability under the Americans with Disabilities Act ("ADA"); that she did not seek, nor did she need, an accommodation to perform the essential functions of her job; and that she did not engage in any protected activity.  Instead, Plaintiff admits that she repeatedly refused a direct work assignment — despite training, support, and multiple opportunities to comply. And at no time did she raise any alleged disability to her supervisor as the reason for her refusal. Thereafter, Caterpillar suspended and then terminated her employment for insubordination in accordance with its policies.

These simple facts, established by the record evidence, compel the conclusion that Plaintiff's ADA discrimination, failure to accommodate, and retaliation claims are meritless.  This Court should grant Caterpillar's Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety.

**UNDISPUTED MATERIAL FACTS**

### I.  The Parties

1.       Defendant Caterpillar Inc. ("Defendant" or "Caterpillar") is a leading manufacturer of heavy-duty equipment for various industries, such as the construction and mining industries. (Ex. 7, Decl. of T. Rowe, ¶1).

2.       From August 8, 2022 to November 6, 2024, Plaintiff worked for Caterpillar at its unionized facility in East Peoria, Illinois. (Ex. 1, Dep. of A. Thomas-Bonds, 19:9–16, 152:16–18).

3.       Since 2023, Plaintiff was a member of the union associated with Caterpillar's East Peoria facility. (Ex. 1, Dep. of A. Thomas-Bonds, 27:1–8).

### II.  Plaintiff's Speech Impediment

4.       Plaintiff has a speech impediment — specifically, a stutter — which is the basis for her alleged disability. (Ex. 1, Dep. of A. Thomas-Bonds, 126:20–22).

5.       Plaintiff does not know the cause of her speech impediment, and it fluctuates from one minute to the next, with no factor she can think of triggering it. (Ex. 1, Dep. of A. Thomas-Bonds, 128:2–12, 140:1–7, 140:19–24).

6.       Plaintiff has had her speech impediment since childhood, and has never been diagnosed with a severe speech impediment. (Ex. 1, Dep. of A. Thomas-Bonds, 9:4–5, 127:3–5, 139:4–10).

7.       There is nothing Plaintiff is unable to do on account of her speech impediment. (Ex. 1, Dep. of A. Thomas-Bonds, 126:23–127:2).

8.       When she joined Caterpillar, Plaintiff represented to Caterpillar that she did not have any disability. (Ex. 1, Dep. of A. Thomas-Bonds, 19:19–21:6); (Ex. 2, Voluntary Identification Form).

2

9.      Similarly, in a pre-employment medical evaluation with Caterpillar, Plaintiff did not express any need for work-related accommodations or restrictions based on a medical condition — despite being prompted during the evaluation to do so. (Ex. 1, Dep. of A. Thomas-Bonds, 21:21–23:13); (Ex. 3, Report of Medical Evaluation at Bates nos. 124, 128).

10.     Throughout her employment with Caterpillar, Plaintiff's supervisor was Theodore "Ted" Rowe ("Rowe"). (Ex. 1, Dep. of A. Thomas-Bonds, 25:5–15, 27:24–28:5).

11.     Rowe had never seen Plaintiff have issues speaking with colleagues, had never seen her stutter affect her communications with other co-workers, and perceived her stutter to occur "very, very rare[lye]" and to be "a non-issue." (Ex. 4, Dep. of T. Rowe, 28:11–29:4).

### III. Caterpillar's Relevant Policies

#### A. EEO Policies

12.     Plaintiff was aware that, during her employment, Caterpillar maintained an ADA/reasonable accommodation policy, a policy prohibiting discrimination on the basis of (among other things) disability, and procedures for reporting complaints or concerns about potential discrimination or harassment. (Ex. 1, Dep. of A. Thomas-Bonds, 11:1–13:24, 16:16–17:2). *See also id.* at 9:7–10:5, 15:2–16:3 (testifying she received Caterpillar's accommodation policy during her employment); (Ex. 5, Policies, at Bates nos. 567–569); (Ex. 11, Employee Handbook, at Bates no. 171).

13.     During her employment, Plaintiff understood Caterpillar's accommodations policy and how to ask for an accommodation. (Ex. 1, Dep. of A. Thomas-Bonds, 15:15–20; 16:9–15).

**B. Disciplinary Policies**

14.      Caterpillar's policies specify that "insubordination" is a type of employee misconduct that may trigger discipline up to and including termination. (Ex. 1, Dep. of A. Thomas-Bonds, 11:8–14, 14:3–15:1); (Ex. 11, Employee Handbook, at Bates no. 183). *See also* (Ex 6, Dep. of J. Smith, 24:20–26:22) (testifying that insubordination triggered "immediate discipline" and an indefinite suspension would result in termination after the union grievance played out if the grievance was not otherwise resolved).

15.      Caterpillar defines "insubordination" as the failure to follow work instructions and directives. (Ex. 1, Dep. of A. Thomas-Bonds, 14:20–15:1); (Ex. 11, Employee Handbook, at Bates no. 183); (Ex 6, Dep. of J. Smith, 26:4–22).

16.      While employed by Caterpillar, Plaintiff was aware that Caterpillar could terminate her employment for insubordination. (Ex. 1, Dep. of A. Thomas-Bonds, 14:3–15:1).

**IV.    Plaintiff's Job Duties at Caterpillar**

**A. The Engine Subassembly Line**

17.      Plaintiff's job title was Assembly and Test Specialist 3. (Ex. 1, Dep. of A. Thomas-Bonds, 23:23–24:4).

18.      Throughout her employment with Caterpillar, Plaintiff worked on the Engine Subassembly Line (the "Line"). (Ex. 1, Dep. of A. Thomas-Bonds, 25:5–15, 27:24–28:5).

19.      The Line is where employees physically construct and build engines. (Ex. 1, Dep. of A. Thomas-Bonds, 28:17–20).

20.      There are more than ten, sequentially-numbered stations and substations on the Line, through which the engine moves so employees can complete each station's assigned tasks. (Ex. 1, Dep. of A. Thomas-Bonds, 28:21–29:3, 30:16–20, 34:6–15); (Ex. 4, Dep. of T. Rowe, 19:8–13.).

4

21.     If a particular station is not completed, the entire Line could shut down. (Ex. 1, Dep. of A. Thomas-Bonds, 33:24–34:5).

## B.  Assigning Stations on the Line

22.     The supervisor assigns assemblers (such as Plaintiff) to stations, and Caterpillar expects employees to follow those assignments. (Ex. 4, Dep. of T. Rowe, 21:9–11); (Ex. 1, Dep. of A. Thomas-Bonds, 32:16–23, 33:5–23).

23.     Supervisors also decide whether an employee is sufficiently trained to work a station. (Ex. 1, Dep. of A. Thomas-Bonds, 52:3–6).

24.     Station 1 is the first station on the Engine Subassembly Line. (Ex. 1, Dep. of A. Thomas-Bonds, 59:20–60:3).

## C.  Caterpillar Trains Plaintiff on Station 1

25.     In July of 2024, during a week Plaintiff otherwise would have been temporarily laid off due to a work shortage, Rowe scheduled Plaintiff to train for two-to-four days on Stations 1 and 2 so she could continue working. (Ex. 1, Dep. of A. Thomas-Bonds, 37:10–39:22, 46:21–47:15, 49:6–8); (Ex. 7, Decl. of T. Rowe, ¶2).

26.     At Station 1, an employee uses a ceiling-mounted hoist to lift an engine onto a dolly so the engine can move down the line and other employees can work on the engine at subsequent stations. (Ex. 1, Dep. of A. Thomas-Bonds, 60:4–9); (Ex. 4, Dep. of T. Rowe, 25:4–9).

27.     The essential functions of the Station 1 position were: removing packing from the engine, installing motor mounts, positioning the dolly, connecting the hoist to the engine, and using the hoist to lift the engine into the dolly. (Ex. 1, Dep. of A. Thomas-Bonds, 60:4–9, 60:15–18, 62:15–63:1, 63:10–64:11, 65:5–15, 65:16–23, 66:13–22, 67:24–68:4, 68:10–69:3) (listing job functions). *Id.* at 69:4–9 (agreeing these job functions were essential). *See also* (Ex. 4, Dep. of T. Rowe, 25:4–9).

5

28.     Plaintiff testified she could perform each of these physical tasks. (Ex. 1, Dep. of A. Thomas-Bonds, 60:15–18, 62:15–63:1, 63:10–64:11, 65:5–15, 65:16–23, 66:13–22, 67:24–68:4, 68:10–69:3).

29.     During her training, a colleague showed Plaintiff how to perform all the steps for Station 1, and she personally used the lifting device to lift the engine onto the dolly. (Ex. 1, Dep. of A. Thomas-Bonds, 52:11–54:3).

30.     Plaintiff's regular duties outside Station 1 also required her to use a lifting device, albeit for a smaller part than the engine in Station 1. (Ex. 1, Dep. of A. Thomas-Bonds, 54:4–24).

31.     Plaintiff testified Station 1 required verbal communication in three instances: (1) confirming the engine type with the forklift driver who dropped the engine off at Station 1; (2) occasionally asking a colleague to bring a dolly; and (3) advising nearby colleagues to stay clear during the lift. (Ex. 1, Dep. of A. Thomas-Bonds, 60:24–61:7, 61:21–62:2, 62:15–63:1, 64:12–65:4, 65:5–15, 65:24–66:6, 67:14–23, 66:7–12, 67:24–68:4, 68:16–24).

32.     The only impact of her speech impediment on her ability to perform Station 1 was that it might take her a "little bit" longer to communicate with her colleagues on the line. (Ex. 1, Dep. of A. Thomas-Bonds, 61:21–62:2, 64:12–65:4, 65:16–66:12, 66:7–12, 90:2–6, 90:21–24, 126:23–127:2).

33.     Rowe would not have had any issue with Plaintiff taking slightly longer with these communications. (Ex. 7, Decl. of T. Rowe, ¶10); (Ex. 1, Dep. of A. Thomas-Bonds, 90:2–20) (testifying she did not know if Caterpillar would have had any issues with her taking slightly longer to communicate).

34.     Plaintiff's job occasionally required her to ask colleagues for help while working and she never experienced problems doing so. (Ex. 1, Dep. of A. Thomas-Bonds, 55:10–56:21).

### V.   Plaintiff Refuses to Work Station 1

35.   On September 4, 2024, Rowe asked Plaintiff to work Station 1 on the Line. (Ex. 1, Dep. of A. Thomas-Bonds, 71:13–72:4).

36.   Rowe asked Plaintiff to work Station 1 because she had the most training on Station 1 of the employees on the Line that day, and the employee who usually worked Station 1 was not present. (Ex. 4, Dep. of T. Rowe, 22:3–23); (Ex. 7, Decl. of T. Rowe, ¶¶ 3–5). *See also* (Ex. 1, Dep. of A. Thomas-Bonds, 46:16–20, 73:1–9, 74:20–23) (testifying she does not know why Rowe asked her to work Station 1; that she "figured" Rowe asked her "because the man who usually does it, he was on – on vacation or something"; and that she does not know if anybody else on her shift on September 4, 2024 was more trained than her to work Station 1).

37.   Plaintiff told Rowe that she did not want to work Station 1 because she did not believe she had been adequately trained. (Ex. 1, Dep. of A. Thomas-Bonds, 79:16–81:3, 81:21–82:6).

38.   Rowe believed Plaintiff was adequately trained for Station 1 based on the representation of her trainer. (Ex. 7, Decl. of T. Rowe, ¶3).

39.   Plaintiff testified that it did not matter how much training she received, she would not work at Station 1 and was scared of the engine due to its size. (Ex. 1, Dep. of A. Thomas-Bonds, 42:9–10, 42:16–43:5, 85:20–23, 96:24–97:3).

40.   Rowe offered to have someone stand by Plaintiff while she worked Station 1 so she could ask questions while working. (Ex. 1, Dep. of A. Thomas-Bonds, 98:1–99:5). *See also* (Ex. 4, Dep. of T. Rowe, 27:12–20).

41.   Plaintiff asked Rowe if John Lefler (another Caterpillar employee) could work Station 1, and Rowe said that was not an option because (a) Lefler was a Team Lead who had his

7

own Team Lead responsibilities to complete, and (b) Plaintiff had more training on Station 1 than Lefler, as Lefler had never been trained on Station 1. (Ex. 1, Dep. of A. Thomas-Bonds, 99:6–12); (Ex. 7, Decl. of T. Rowe, ¶¶ 8–9).

42.    Ultimately, Plaintiff refused to work Station 1. (Ex. 1, Dep. of A. Thomas-Bonds, 72:8–11); (Ex. 7, Decl. of T. Rowe, ¶6).

43.    Rowe then reached out to the Labor Relations team for guidance, and they sent two union representatives to speak with Plaintiff outside of Rowe's presence to see if they could resolve the situation. (Ex. 1, Dep. of A. Thomas-Bonds, 82:7–84:15); (Ex 6, Dep. of J. Smith, 19:6–24, 21:20–22:20, 23:14–23); (Ex. 4, Dep. of T. Rowe, 23:17–24:11, 26:6–12).

44.    While speaking with the union representatives, Plaintiff mentioned her speech impediment. (Ex. 1, Dep. of A. Thomas-Bonds, 82:16–83:6, 121:8–10). One union representative still tried to encourage Plaintiff to work at Station 1. *Id.* at 83:7–20.

45.    After speaking with Plaintiff, one of the union representatives told Rowe that Plaintiff was "100 percent refusing to go there [i.e., Station 1]." (Ex. 4, Dep. of T. Rowe, 23:9-25:14). *See also* (Ex. 1, Dep. of A. Thomas-Bonds, 85:3–7) (testifying she did not know what the union representative told Rowe).

46.    The union representatives did not mention Plaintiff's speech impediment to Rowe. (Ex. 7, Decl. of T. Rowe, ¶7).

47.    Consistent with Caterpillar's standard practice, Rowe counseled Plaintiff that her refusal to work Station 1 was insubordination. (Ex. 1, Dep. of A. Thomas-Bonds, 99:17–20); (Ex. 4, Dep. of T. Rowe, 23:9-22); (Ex. 6, Dep. of J. Smith, 26:11–22). Plaintiff still refused to work at Station 1.

48. Caterpillar then walked Plaintiff out of the plant and indefinitely suspended her. (Ex. 1, Dep. of A. Thomas-Bonds, 101:6–20); (Ex. 4, Dep. of T. Rowe, 23:9-22); (Ex 6, Dep. of J. Smith, 24:20–26:22).

49. Plaintiff never told Rowe that she refused to work Station 1 due to her speech impediment. (Ex. 4, Dep. of T. Rowe, 22:3–25:12, 27:12–23, 29:6–13); (Ex. 7, Decl. of T. Rowe, ¶6); (Ex. 1, Dep. of A. Thomas-Bonds, 72:2–11, 73:1–9, 74:16–23, 77:23–79:12, 80:12–23, 83:24–82:6, 99:21–24, 121:11–122:5, 123:1–4,  143:22–144:4).

50. Plaintiff did not request an accommodation due to her speech impediment. (Ex. 4, Dep. of T. Rowe, 29:6–13); (Ex. 1, Dep. of A. Thomas-Bonds, 72:2–11, 73:1–9, 74:16–23, 77:23–79:12, 80:12–23, 83:24–84:6, 99:21–24, 121:11–122:5, 123:1–4, 143:22–144:4).

51. Plaintiff did not complain to Rowe or to HR that she thought she was being discriminated against on the basis of her speech impediment or denied a reasonable accommodation. (Ex. 1, Dep. of A. Thomas-Bonds, 72:2–11, 73:1–9, 74:16–23, 77:23–79:12, 80:12–23, 83:24–84:6, 99:21–24, 121:11–122:5, 123:1–4); (Ex. 7, Decl. of T. Rowe, ¶6); (Ex. 8, Complaint to Human Resources) (not mentioning speech impediment or a desire for an accommodation).

52. Plaintiff's concerns about her lack of training for Station 1 was a "different thing[]" from any concerns she had about her speech impediment. (Ex. 1, Dep. of A. Thomas-Bonds, 88:23–89:13).

53. On September 5, 2024, Plaintiff filed a union grievance. *See* (Ex. 9, Union Grievance). Plaintiff's grievance did not mention her speech impediment or any requests for an accommodation. *Id.*; (Ex 6, Dep. of J. Smith, 21:8-19); (Ex. 1, Dep. of A. Thomas-Bonds, 107:10–21).

9

54.     Senior Labor Relations Partner Jared Smith ("Smith") addressed Plaintiff's grievance. (Ex. 6, Dep. of J. Smith, 8:9–10:1, 28:17–29:19.)

55.     After reviewing Plaintiff's grievance and discussing it with the union in accordance with the grievance process, Smith determined that Caterpillar should terminate Plaintiff's employment, as he considered it a "clear-cut insubordination case." (Ex. 6, Dep. of J. Smith, 8:9–13, 9:17–10:1, 25:14–26:3, 28:17–19, 32:8–16, 37:7–17).

56.     At the time Smith made the termination decision through the end of Plaintiff's employment, he had never met Plaintiff and was unaware Plaintiff had a speech impediment. (Ex. 6, Dep. of J. Smith, 27:8–11, 34:13–24, 36:19–37:6). *See also* (Ex. 1, Dep. of A. Thomas-Bonds, 23:14–18; 115:11–14) (testifying she had never met Smith).

57.     At the time Smith made the termination decision and through the end of Plaintiff's employment, so far as he was aware, Plaintiff never made any complaints concerning disability discrimination and never requested an accommodation. (Ex. 6, Dep. of J. Smith, 27:8–11, 34:13–24, 36:19–37:6).

58.     Plaintiff admitted that she had no reason to think Smith would discriminate against or retaliate against her in any way, and further admitted that she did not have any evidence that Caterpillar terminated her due to her speech impediment. (Ex. 1, Dep. of A. Thomas-Bonds, 23:14–18; 115:11–14).

59.     After the grievance process was completed on November 6, 2024, Smith's decision to terminate Plaintiff's employment took effect. (Ex. 6, Dep. of J. Smith, 16:22–18:23, 29:15–19, 32:4–16, 37:7–21, 39:4–8); (Ex. 10, Termination Letter).

60.    Plaintiff testified that in or after the middle of October of 2024, she tried to mail Smith a letter[1] in which she complained that she had been discriminated against on the basis of her disability and/or denied a reasonable accommodation. (Ex. 1, Dep. of A. Thomas-Bonds, 116:20–114:24–115:17).

61.    This letter was the first and only time Plaintiff claims she attempted to tell Rowe, Smith, Human Resources, or Labor Relations that she needed an accommodation or had been discriminated against. (Ex. 1, Dep. of A. Thomas-Bonds, 121:19–22). *See also id.* at 112:11, 114:2–23–18 (testifying she sent the letter after being told to do so and after making the decision to sue Caterpillar).

62.    The post office returned Plaintiff's letter unopened, and Plaintiff agreed nobody at Caterpillar could have read the letter. (Ex. 1, Dep. of A. Thomas-Bonds, 117:13–19, 121:23–123:4). *See also* (Ex. 6, Dep. of J. Smith, 38:5–14) (testifying he never received a letter from Plaintiff).

**<u>LEGAL STANDARD</u>**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a party fails to make a showing sufficient to establish the existence of an element essential to their case, a court must grant summary judgment. *Id.* A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 242 (1986).

---

[1] Plaintiff has not produced this letter in discovery, despite requests to do so. *See, e.g.*, (Ex. 1, Dep. of A. Thomas-Bonds, 116:1–10, 117:10–19) ("I still have the – the mail and everything, but I never reopened it.").

A court is not required to draw every conceivable inference in a plaintiff's favor, only reasonable inferences. *Smith v. Hope School,* 560 F.3d 694 (7th Cir. 2009). Specifically, "inferences relying on mere speculation or conjecture will not suffice[.]" *Trade Fin. Partners, LLC v. AAR Corp.,* 573 F.3d 401, 407 (7th Cir. 2009) (citation omitted). Instead, a plaintiff must present "definite, competent evidence" to rebut a defendant's motion. *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000).

The non-moving party cannot avoid summary judgment simply by creating any factual dispute. *Tolle v. Carrol Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994) (citations omitted). Rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit. *Id.*  This standard provides that the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis original).

## ARGUMENT

### I.    Plaintiff's ADA-Discrimination Claim Fails at Every Level (Count I).

Caterpillar analyzes Plaintiff's claims under the *McDonnell Douglas* framework, though the ultimate conclusion is the same regardless of approach, as Plaintiff has no evidence whatsoever of discrimination. *See generally Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) (evidence must be considered as a whole and permitting, but not requiring, use of the *McDonnell Douglas* framework at summary judgment).

To assert a *prima facie* case of disability discrimination, Plaintiff must show that (1) she is a qualified individual with a disability, (2) she was meeting her employer's legitimate expectations, (3) suffered an adverse employment action, and (4) similarly situated employees without a disability were treated more favorably. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657

12

F.3d 595, 601 (7th Cir. 2011). If a plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer does so, the burden shifts back to the employee to show the employer's proffered reason is pretext for discrimination. *Id.*

Plaintiff cannot establish her *prima facie* case. Plaintiff cannot show she is "disabled" under the ADA or that she was meeting Caterpillar's legitimate expectations. Indeed, Caterpillar suspended and terminated Plaintiff after she was insubordinate in refusing to work the station her supervisor assigned. Plaintiff likewise has no evidence that Caterpillar's reason for its actions was pretextual. Significantly, the decisionmaker with respect to her termination had never met Plaintiff and did not even know she had a speech impediment. Plaintiff's claims fail at every step of the analysis.

### A. Plaintiff cannot show she is "disabled" under the ADA.

Plaintiff's ADA discrimination claim fails at the outset because she is not entitled to the ADA's protections in the first instance. To proceed, Plaintiff must show she is disabled within the meaning of the ADA. *See* 42 U.S.C. § 12102. The ADA defines disability, in relevant part, as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; [or] (B) a record of such an impairment." 42 U.S.C. § 12102(1).

Here, Plaintiff fails to show she has an impairment[2] that substantially limits a major life activity. While speech is a "major life activity," Plaintiff must further establish that her speech is

---

[2] Plaintiff arguably has not met the burden to establish that she has an "impairment" under the ADA.  The ADA requires an impairment to derive from either a physiological or mental condition or disorder. 29 C.F.R. § 1630.2(h). The Seventh Circuit recently concluded that simply being obese is not an "impairment" absent evidence establishing the plaintiff's "extreme obesity was caused by a physiological disorder or condition[.]" *See Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 887–88, 891–92 (7th Cir. 2019). Here, Plaintiff admitted she does not know why she has a speech impediment. (UMF #*); thus, she lacks evidence connecting her alleged disability to an underlying physiological or mental condition or disorder. This evidentiary gap is another basis for summary judgment.

limited as compared to "most people in the general population." *See* 29 C.F.R. § 1630.2(i)(1)(i) (listing speech as a major life activity); *Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 803 (7th Cir. 2023). It is insufficient for Plaintiff to simply claim her condition impacts a major life activity without offering evidence about the nature and severity of this limitation.[3]

In the speech-impediment context, courts require more from plaintiffs than vague statements that they have difficulty communicating with others — especially in light of contrary evidence suggesting a plaintiff is able to function without meaningful difficulty. *See, e.g.*, *Bates v. Wis.*, 636 F. Supp. 2d 797, 809 (W.D. Wis. 2009) (rejecting a plaintiff's stutter as basis for an ADA claim; "There is some mention in the record that plaintiff stutters. However, there is no evidence that plaintiff's stuttering substantially limits any major life activity."); *Smith v. City of Gainesville*, No. 1:21-cv-00136-AW-GRJ, 2022 U.S. Dist. LEXIS 190700, at *18 (N.D. Fla. Aug. 18, 2022) (holding that "[p]laintiff's bare assertions that his speech impediment . . . render him disabled are insufficient."); *Bhatti v. SSM Health Care of Okla., Inc.*, No. CIV-19-0655-F, 2021 U.S. Dist. LEXIS 1036, at *18 (W.D. Okla. Jan. 5, 2021) (holding plaintiff's stutter did not substantially limit a major life activity where plaintiff testified it does not prevent him from engaging in day-to-day activities or impact his ability to work, and that he never requested any accommodation); *Ripple v. Olympic Steel Inc.*, 2014 U.S. Dist. LEXIS 17528, at *3–4 (M.D. Pa. Feb. 10, 2014) (the plaintiff's stutter was not substantially limiting; "Plaintiff testified that his

---

[3] *See, e.g., Kuipers v. Drake Tower Apts., Inc.,* 2025 U.S. Dist. LEXIS 151234, *15–16 (N.D. Ill. Aug. 6, 2025) (plaintiff failed to show her asthma was substantially limiting when her only evidence was her statement that her asthma, generally, impacted her ability to breathe); *Rosenbaum v. Zorn Compressor & Equip., Inc*., 2025 U.S. Dist. LEXIS 44560, at *28–29 (W.D. Wis. Mar. 12, 2025) (plaintiff failed to show her meniscus tear substantially limited her ability to concentrate at work when her only evidence was that her injury "affected" her concentration, was "distracting," and made her more "irritable"); *id.* at *29–30 (plaintiff failed to show her meniscus tear substantially limited her ability to walk when the evidence showed her doctor did not place her on any restrictions and the plaintiff testified she only used a cane to walk as a precaution but did not use it all the time). *See also Frazier-Hill,* 75 F.4th 797 at 803–804 (plaintiff failed to show her carpal tunnel syndrome substantially limited her ability to lift at the time of her accommodation request in 2018; her evidence comprised a 2016 set of restrictions that had expired and a 2018 report speaking to her grip strength, not her ability to lift).

stutter did not in any way affect his job performance . . . because he was able to communicate with machine operators and other employees.");

Here, Plaintiff's own testimony establishes that her speech impediment does not substantially limit her ability to speak. Indeed, she testified that:

- There is nothing she cannot do based on her speech impediment. (UMF #*).

- She could communicate with coworkers and perform all job-related communication required at Station 1. (UMF #*).

- She has never been diagnosed with a severe speech impediment. (UMF #*).

- She did not identify her speech impediment as a disability when hired and never requested an accommodation for it during her employment. (UMF #*).

At most, Plaintiff agreed that her speech impediment might, sometimes, cause her to take a "little bit" more time to communicate with others. (UMF #*). Such a vague claim is insufficient to establish her speech impediment is substantially limiting. Accordingly, Plaintiff lacks sufficient evidence to show she is "disabled" for the purposes of the ADA, and her ADA claims necessarily fail.

**B. Plaintiff did not meet Caterpillar's legitimate expectations when she refused to work Station 1.**

Beyond lacking any actionable "disability," Plaintiff's claim also fails because Caterpillar terminated her employment for a legitimate, non-discriminatory reason: she refused a direct work assignment, and therefore was insubordinate. *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478, 480 (7th Cir. 2010) ("[Plaintiff] was not meeting her employer's legitimate expectations if she was insubordinate"); *Ford v. Rockford Bd. of Educ.*, 2019 U.S. Dist. LEXIS 12931, at *9–10 (N.D. Ill. Jan. 28, 2019) (employee was insubordinate — and not meeting the employer's legitimate expectations — when he refused to go to a field trip to the zoo as ordered by a supervisor); *Kelly v. Project of the Quad Cities, Inc.*, Case No. 4:19-cv-04078-SLD-JEH, 2021 U.S. Dist. LEXIS

76723, 2021 WL 1566444, at *5 (C.D. Ill. Apr. 21, 2021) ("[B]ecause it is not disputed that [the plaintiff] violated company policy, she cannot show that she was performing adequately.").

The undisputed record evidence shows that (1) Caterpillar's policies identify insubordination as a basis for termination; (2) insubordination includes refusing to follow a supervisor's directive; (3) on September 4, 2024, Rowe directed Plaintiff to work at Station 1; (4) Plaintiff refused, despite Rowe counseling her that her refusal constituted insubordination; and (5) Caterpillar ultimately terminated Plaintiff's employment for her "clear-cut" insubordination. (UMF #*). This was a straightforward application of Caterpillar's policies and a legitimate basis for termination.

Further, Plaintiff has no evidence connecting her refusal to work on Station 1, or Caterpillar's actions, to her speech impediment. It is undisputed that Plaintiff did not mention her speech impediment during the incident or request an accommodation. (UMF #*). She admitted her speech impediment did not prohibit her from working at Station 1 and that her concerns about Station 1 were unrelated to her speech impediment. (UMF #*). Accordingly, the undisputed record evidence shows that Caterpillar's decisions to suspend, and ultimately terminate Plaintiff's employment were unrelated to any claimed disability. Because Plaintiff is unable to establish a *prima facie* case of disability discrimination, summary judgment is warranted.

## C. There is no evidence of pretext.

Plaintiff also lacks any evidence suggesting Caterpillar's reason for her suspension and termination (her insubordination) was pretext for disability-based discrimination. Pretext is more than "faulty reasoning or mistaken judgment"; rather, it is "a lie" or "a phony reason for some action." *See Barnes v. Bd. of Trs. of Univ. of Illinois*, 946 F.3d 384, 389 (7th Cir. 2020) (internal quotations omitted). When evaluating pretext, the question is not whether the employer's stated

16

reason was inaccurate or unfair, but instead was honestly believed. *Robertson v. Wis. Dep't of Health Servs.*, 949 F.3d 371, 380 (7th Cir. 2020). Plaintiff must identify such weaknesses, implausibilities, inconsistencies, or contradictions in Caterpillar's rationale that a reasonable person would find it unworthy of credence. *Id. See, e.g.*, *Lewis v. Ind. DOT*, 173 F.4th 876, 886 (7th Cir. 2026) ("[Plaintiff] did not raise any material dispute that her supervisor's beliefs about her insubordination and ineffectiveness were insincere."); *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607 (7th Cir. 2022) (employee's disagreement with supervisor's assessment does not establish pretext); *Barnes*, 946 F.3d at 390 (pretext not present even when the employer's process was arguably not "accurate, wise, or well-considered") (internal quotations omitted).

There are no weaknesses, implausibilities, inconsistencies, or contradictions in Caterpillar's rationale for the actions it took against Plaintiff. Plaintiff has no evidence that Rowe lied about his reasons for suspending her. To the contrary, the record evidence is clear that Rowe suspended Plaintiff because she refused to work at Station 1. Moreover, Smith, who terminated Plaintiff's employment, was not even aware of her alleged disability. It makes no sense that his reason for terminating Plaintiff's employment (her insubordination) was just a ruse to hide disability discrimination when he did not know of her alleged disability. "[I]t is axiomatic that if a decisionmaker was truly unaware that an [individual] had a disability, it would be impossible for their . . . decision to have been based, even in part, on the [individual's] disability." *EEOC v. Wal-Mart Stores, Inc.*, 798 F. Supp. 3d 879, 894 (C.D. Ill. 2025); *Yonli v. Snyder's Lane, Inc.*, 2026 U.S. Dist. LEXIS 60267, at *20 (S.D. Ind. Mar. 23, 2026) (summary judgment for employer when decisionmaker was unaware of the plaintiff's disability); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014) (noting it is "well-established" that an employer cannot be held

"liable under the ADA if the employer has no knowledge of the employee's disability"). In addition, Smith did not know whether Plaintiff ever complained of disability-based discrimination or requested an accommodation (indeed, she did not). (UMF #*). Plaintiff likewise conceded she had no evidence Smith discriminated or retaliated against her in any way. (UMF #*).

Accordingly, Plaintiff cannot establish *prima facie* case, and she has no evidence of pretext. This Court should grant summary judgment on Plaintiff's discrimination claim.

## II.   Plaintiff's Failure to Accommodate Claim Fails (Count II).

Plaintiff's failure-to-accommodate claim fails for multiple independent reasons: she was not disabled under the ADA, she did not notify Caterpillar of any alleged disability, and she neither requested nor required an accommodation.

Plaintiff's failure-to-accommodate claim requires her to show (1) she is a qualified individual with a disability; (2) Caterpillar was aware of her disability; and (3) Caterpillar failed to accommodate her disability. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). Plaintiff falls short at each step.

### A.  Plaintiff Is Not A Qualified Individual With A Disability

Plaintiff cannot establish her failure-to-accommodate claim because she is not "disabled" within the meaning of the ADA. As discussed above, Plaintiff's speech impediment does not substantially limit a major life activity. *See* Argument, Part I.A, *supra*. Plaintiff's inability to show that she is a qualified individual with a disability is fatal to her claim, meriting summary judgment.

### B.  Caterpillar Was Not Aware of Plaintiff's "Disability."

Plaintiff's failure-to-accommodate claim also fails because Caterpillar was unaware of any substantial limitation requiring an accommodation.

To establish her failure-to-accommodate claim, Plaintiff must show that Caterpillar either knew or had a reasonable basis to infer that Plaintiff was substantially limited in a specific life activity. *Scheidler*, 914 F.3d at 541. Mere knowledge of a limitation on one major life activity does not trigger knowledge of a limitation on a separate major life activity. *See, e.g.*, *Hoff v. Performance Food Grp., Inc.*, No. 06-cv-4071, 2009 U.S. Dist. LEXIS 19521, at *18, *19 (C.D. Ill. Mar. 11, 2009) (finding defendant lacked awareness of plaintiff's reduced ability to walk even though the employer was aware of the plaintiff's reduced ability to lift).

Here, Plaintiff told Rowe her perceived lack of training prevented her from working at Station 1. (UMF #*). Plaintiff also testified that her training-related concerns were unrelated to her speech impediment. (UMF #*). Moreover, Rowe perceived Plaintiff's speech impediment to manifest "very, very rare[ly]" and to be a "non-issue." (UMF #*). And Plaintiff agreed her speech impediment did not prevent her from performing the essential functions of the job at Station 1. Thus, the record evidence shows Rowe had no reason to believe that Plaintiff's speech impediment posed any limitation generally, let alone had any connection to her unwillingness to work at Station 1. As in *Hoff*, Rowe had no basis to believe Plaintiff had a "disability" that substantially limited a specific life activity, and which required an accommodation.

## C. Plaintiff Neither Requested nor Required a Reasonable Accommodation.

Plaintiff's failure-to-accommodate claim also fails because she neither requested an accommodation nor requested one to perform her job. To establish liability for failure-to-accommodate under the ADA, "a plaintiff must normally request an accommodation[.]" *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012) (citing *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000)). Courts routinely reject failure-to-accommodate claims where, as here, the plaintiff never made such a request. *See, e.g.*, *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) (affirming dismissal of failure

19

to accommodate claim because plaintiff "never requested an accommodation" despite allegations that his employer was aware of his medical condition). Further, an employer cannot "fail" to provide an accommodation that an employee does not need in the first place. *See, e.g.*, *Ross v. FedEx Freight*, 2021 U.S. Dist. LEXIS 179616, at \*35–36 (S.D. Ind. Sept. 21, 2021) (concluding an employee's testimony that he did not need an accommodation to perform his job was "fatal to his failure to accommodate claim").

Here, it is undisputed that Plaintiff never requested an accommodation for her speech impediment. (UMF #\*). She did not tell Caterpillar of any need for accommodation during the September 4th incident and did not attribute her refusal to work at Station 1 to her speech impediment. (UMF #\*).[4] To the contrary, Plaintiff testified that her refusal was based on her perceived lack of training—not any limitation related to her speech. (UMF #\*).

Nor was any accommodation necessary. Plaintiff admitted that her speech impediment did not prevent her from performing any essential job functions, including all communication required at Station 1. (UMF #\*). At most, she testified that it might occasionally take her a "little bit" longer to communicate with her colleagues — which was a non-issue for Rowe, even if Plaintiff had voiced this as a concern. (UMF #\*).

Caterpillar cannot be liable for failing to provide an accommodation Plaintiff never requested or needed — and is entitled to summary judgment on this claim. *See Ross*, 2021 U.S. Dist. LEXIS 179616, at \*35–36 (summary judgment for employer when employee's testimony showed they neither requested nor needed an accommodation).

---

[4] Plaintiff testified that she told a union representative about her speech impediment after her refusal to work Station 1, but the union representative did not tell Rowe or anyone else to Caterpillar's knowledge. (UMF #\*).

20

### III.    Plaintiff Cannot State A Retaliation Claim.

Plaintiff's retaliation claim fails because she did not engage in any protected activity and therefore cannot causally connect this non-existent activity to a non-existent retaliatory motive. To state a retaliation claim Plaintiff must establish that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).  Plaintiff cannot satisfy the first or third elements.

First, she did not engage in any ADA-protected conduct. To engage in protected activity, Plaintiff must have either sought an accommodation or complained of disability-based discrimination. *See Trahanas v. Nw. Univ.*, 64 F.4th 842, 856 n.6 (7th Cir. 2023). Plaintiff fully admits that she did neither. *See* Argument, Part II(C) (Plaintiff did not request an accommodation); (UMF #*) (Plaintiff did not complain of discrimination).

Second, Plaintiff cannot show causation. Fundamentally, there cannot be retaliation when there is no protected activity: "protected activity first; retaliation second." *See Etheridge v. HG Retail, LLC*, 2022 U.S. Dist. 21826, at *16 (N.D. Ill Feb. 8, 2022). As discussed, Plaintiff never engaged in any protected activity, defeating causation.

But Plaintiff's issues continue. Even assuming Plaintiff did engage in protected activity (and she did not), it is undisputed that Rowe and Smith, the alleged retaliators, knew nothing about it.  Plaintiff said nothing to Rowe or Smith about needing an accommodation, nor did she ever complain about disability discrimination.  An employer cannot retaliate for conduct of which it is unaware — further showing summary judgment is warranted here. *Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, 998 n.3 (7th Cir. 2024); *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012) (affirming summary judgment for employer on retaliation claim where the protected activity post-dated the adverse action; "An employer must have actual knowledge of the

employee's protected activity to state a claim for retaliation."). Finally, Caterpillar terminated Plaintiff for a legitimate non-pretextual reason: her insubordination. *See* Argument, Part I.B–C, *supra*.

Accordingly,  Plaintiff's retaliation claim fails on all fronts and merits summary judgment.

**CONCLUSION**

For the reasons stated above, Caterpillar respectfully requests that this Court enter summary judgment on all of Plaintiff's claims and enter judgment in Caterpillar's favor.

DATED: June 26, 2026                                  Respectfully submitted,

                                                      Caterpillar Inc.


                                                      By: */s/ Bryan Vayr*
                                                          One of Its Attorneys


Katherine Mendez, Bar No. 6297183
kmendez@seyfarth.com
Bryan Vayr, Bar No. 6327729
bvayr@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:   (312) 460-5000
Facsimile:   (312) 460-7000

22

**TYPE-VOLUME CERTIFICATION**

In compliance with Local Rule 7.1(D)(F), the undersigned certifies that the Legal Standard and Argument portions of this Motion for Summary Judgment, including footnotes, comprise fewer than 15 double-spaced pages and fewer than 7,000 words. According to the undersigned word-processing software, the Legal Standard and Argument sections total 11 pages and 3,121 words.

_/s/ Bryan Vayr_

Bryan Vayr

**<u>CERTIFICATE OF SERVICE</u>**

I, Bryan Vayr, an attorney, certify that on June 26, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Bryan Vayr*
Bryan Vayr