E-FILED
Thursday, 27 August, 2026 12:49:21 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| ARNEISHA THOMAS-BONDS,<br>Plaintiff,<br><br>v.<br><br>CATERPILLAR INC.,<br>Defendant. | Case No. 1:25-cv-1071 |

**Order**

Now before the Court is the Defendant, Caterpillar Inc.'s ("Caterpillar") Motion for Summary Judgment (D. 17).[1] For the reasons set forth below, Caterpillar's Motion is granted.

**I**

On February 21, 2025, the Plaintiff filed the operative Complaint (D. 1). Caterpillar filed the pending Motion for Summary Judgment on June 26, 2026 (D. 17), to which the Plaintiff responded (D. 19) and Caterpillar replied (D. 22). The Motion is therefore ripe for disposition.

**II**

This case alleges that Caterpillar violated the ADA when it terminated the Plaintiff from her position as Assembly and Test Specialist 3 because of her speech impediment. In that role, the Plaintiff helped construct and build engines on the Engine Subassembly Line. That line is one of ten stations through which the employees construct engines.

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

On September 4, 2024, the Plaintiff was asked by her supervisor, Theodore Rowe, to work at Station 1. The Plaintiff told Mr. Rowe that she did not feel adequately trained to do so. Mr. Rowe, meanwhile, believed the Plaintiff was in fact adequately trained. When the Plaintiff still ultimately refused to work on Station 1, Mr. Rowe left the immediate area and two union representatives spoke with the Plaintiff. In that conversation, the Plaintiff mentioned that her lack of training, lack of safety, and speech impediment rendered her uncomfortable to work at Station 1. Mr. Rowe then returned and informed the Plaintiff that her refusal to work at Station 1 constituted insubordination; Caterpillar then walked her out of the premises and indefinitely suspended her.

On September 5, 2024, the Plaintiff filed a union grievance. After Caterpillar's Senior Labor Relations Partner, Jared Smith, reviewed the grievance, he concluded that Caterpillar should terminate the Plaintiff for insubordination. On November 6, 2024, Caterpillar terminated the Plaintiff.

In response to her termination, the Plaintiff filed the pending, three-count Complaint: Count One (Disability-Based Discrimination under the ADA), Count Two (Failure to Accommodate under the ADA), and Count Three (Retaliation under the ADA). At its core, the Complaint alleges that the Plaintiff was terminated because of her life-long speech impediment. That speech impediment, alleges the Plaintiff, compromised her ability to adequately and safely communicate on the line, and should have been accommodated with additional training time. In the Pending Motion, Caterpillar argues that the Plaintiff was terminated not because of her disability, but because of insubordination. Consequently, Caterpillar seeks summary judgment on all three counts.

**III**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "The parties must support their assertions that a fact cannot be or is genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .'" *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255 (1986). Finally, a

scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 250. "The same standard applies when considering cross-motions for summary judgment." *City of Chi. v. Equte LLC*, 693 F. Supp. 3d 879, 889 (N.D. Ill. 2023) (citing *Int'l Bhd. of Elec. Workers, Loc. 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). Therefore, when considering the Plaintiff's Motion for Summary Judgment, the Court views all the evidence in the light most favorable to Defendants, and when considering Defendants' Motion for Summary Judgment, the Court views all the evidence in the light most favorable to the Plaintiff. *Id*.

**IV**

As to the Plaintiff's first claim, Caterpillar argues: (1) the Plaintiff is not disabled; (2) Caterpillar terminated the Plaintiff for insubordination, not her disability; and (3) the Plaintiff has not demonstrated pretext. To defeat Count Two, Caterpillar avers: (1) the Plaintiff is not disabled; (2) Caterpillar was not aware of any disability; and (3) the Plaintiff never requested an accommodation. Lastly, Caterpillar seeks summary judgment against Count Three because the Plaintiff cannot state a retaliation claim. The Court will address these three claims in turn.

**A**

Under Count One, the Plaintiff alleges that Caterpillar "suspended and terminated Plaintiff's employment on the basis of Plaintiff's disability." (D. 1 at ECF p. 5). To prove a claim under the ADA, "a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 503 (7th Cir. 2017) (quoting *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016)). To succeed on the final prong, "a plaintiff must show a genuine issue of material

fact exists regarding whether his disability was the 'but for' reason for the adverse action, in this case termination." *Id*. (citing *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010)).

**1**

Here, the Court will assume for purposes of this analysis that the Plaintiff is disabled under the ADA and focus on prong three: whether Caterpillar terminated the Plaintiff because of her disability. Caterpillar argues that it terminated the Plaintiff for insubordination; i.e., her refusal to work at Station 1 on September 4, 2024. In support, Caterpillar highlights that (1) its policies permit termination for insubordination, (2) Mr. Rowe directed the Plaintiff to work at Station 1, (3) the Plaintiff refused, and (4) Caterpillar fired her for that insubordination with no knowledge that her speech impediment played a role. At the time of Mr. Rowe's interaction with the Plaintiff, Caterpillar argues that the Plaintiff did not bring up her speech impediment. Thus, Caterpillar argues that it terminated the Plaintiff for insubordination, not because of her disability.

In response, the Plaintiff argues that she was not insubordinate; rather, she was uncomfortable working at Station 1 because of her speech impediment. Specifically, the Plaintiff argues that she told Mr. Rowe "she was uncomfortable working Station 1 because of inadequate training and her need to communicate extensively with others", and "mentioned her speech impediment to union representatives during the same incident." (D. 19 at ECF p. 17). The Plaintiff's conversation with the union representatives and request for additional training, she argues, served to communicate her disability and creates a jury question as to whether the Plaintiff was fairly terminated for insubordination.

The Court finds that the Plaintiff has failed to raise a jury question that she was terminated for any reason relating to her speech impediment. As an initial matter, the Plaintiff argues that when Mr. Rowe asked her to work on Station 1,

she referenced inadequate training and her need to communicate with others. In support, the Plaintiff testified that her speech impediment impacted her ability to work at Station 1 because of her "not being able … to get stuff out" in a potentially unsafe situation. (D. 17-1 at 88:11–17). To remedy this, the Plaintiff explained that it would have helped if she had a little more time to "build a relationship" with the co-workers at Station 1 so that she could communicate more clearly. (*Id*. at 89:21–24, 90:1).

But the Plaintiff has not provided any evidence that she communicated *to Caterpillar* that her speech impediment impacted her performance at Station 1. The Plaintiff does testify that she informed a union representative that her speech impediment played a role in her discomfort. But the Plaintiff does not provide evidence that the union representative communicated that information to Caterpillar, nor that the Plaintiff communicated that information to Caterpillar. In fact, the union grievance (D. 17-9) makes no mention of the Plaintiff's speech impediment. The Plaintiff also provides no authority that verbal communications with a union representative can be imputed upon an employer who works in conjunction with, but does not employ, that union representative.

Moreover, the Plaintiff clarified in her deposition that her (1) lack of training and (2) speech impediment are separate concerns; it thus could not have been evident to Caterpillar that the Plaintiff's need for more training was to ease difficulties caused by her speech impediment. (D. 17-1 at 89:9–13) ("Q: But no amount of training is going to change your ability to speak to people while working Station 1, is it? A: [M]y speech and the … training … are two different things.").

The only attempted evidence of communication is that, in October of 2024, the Plaintiff sought to mail Caterpillar a letter that outlined her discrimination

complaint. But the post office returned that letter unopened, and there is no suggestion that Caterpillar ever opened that letter.

Thus, the Plaintiff has provided no evidence that Caterpillar was aware that her speech impediment played a role in her refusal to work at Station 1. No reasonable jury, therefore, could find that Caterpillar terminated the Plaintiff because of her disability—let alone that the speech impediment was the "but-for" cause of her termination. In other words, the Plaintiff provides no link between her speech impediment and her termination.

The Court acknowledges that the Plaintiff may in fact have felt unsafe working at Station 1, and it is quite possible that the Plaintiff was undertrained for that job. But this is not a breach of employment contract case or a wrongful termination case: it is a disability discrimination case. At no point did the Plaintiff communicate to Caterpillar that the reason for her hesitancy, and her need for more training, was due to her speech impediment. Caterpillar, therefore, has carried its burden of foreclosing any issue of fact that the Plaintiff's speech impediment was the but-for cause of her termination, and the Plaintiff has presented no evidence to undermine Caterpillar's showing. *See, e.g., Lee v. Chicago Sch. Reform Bd. of Trs.*, 43 F. App'x 979, 982 (7th Cir. 2002) (affirming summary judgment in discrimination case because "insubordination itself was a legitimate, nondiscriminatory reason for [the plaintiff's] termination"); *Kelly v. Project of the Quad Cities, Inc.*, No. 419CV04078SLDJEH, 2021 WL 1566444, at *5 (C.D. Ill. Apr. 21, 2021) (holding that the plaintiff's "violation of company policy shows that she was not meeting her employer's legitimate expectations"); *Turnbow v. Cook DuPage Transportation/Nation Express*, No. 21-CV-04588, 2025 WL 2802928, at *3 (N.D. Ill. Sept. 30, 2025) ("Because no reasonable jury could find that disability was the but-for cause of Plaintiff's firing on this record, summary judgment for Defendant is warranted on the ADA discrimination claim.").

**2**

Nor can the Plaintiff establish pretext. "In determining whether an employer's stated reason [for discharge] is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (internal citations omitted). "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008).

To establish pretext, the Plaintiff argues that (1) the Plaintiff was suspended on the same day that she disclosed her disability, and (2) Mr. Rowe knew the Plaintiff had a speech impediment. Both arguments errantly assume that the Plaintiff communicated to Caterpillar that her speech impediment impaired her ability to work at Station 1. The Plaintiff still has not provided that evidence. Accordingly, for the same reason the Plaintiff's causation argument fails in Section III(A)(1), the Plaintiff's pretext argument fails here. Without any meaningful evidence that Caterpillar was aware that the Plaintiff's speech impediment was relevant, a jury is hard-pressed to conclude that Caterpillar's rationale of insubordination was a "lie, … a phony reason for" terminating the Plaintiff. *Id.*; *see also Nunn v. Illinois State Bd. of Educ.,* 448 F. Supp. 2d 997, 1002 (C.D. Ill.), *aff'd*, 211 F. App'x 502 (7th Cir. 2006) ("Third, even if Nunn had established a prima facie ADA claim, the ISBE offered a legitimate, nondiscriminatory reason for her termination when it stated that it fired Nunn because of her disruptive behavior. Nunn offers no evidence to show that ISBE's proffered reason for termination was pretextual. For this reason too, the ISBE is entitled to summary judgment."); *Brown v. Quest Diagnostic*, No. 07 C 952, 2008 WL 11395469, at *6 (N.D. Ill. Feb. 26, 2008) ("Therefore, the undisputed facts show that Quest has offered a legitimate and

non-discriminatory reason for Brown's termination. Quest states that it was business demands and not a prohibited animus that led them to terminate Brown as an employee. Brown has failed to point to any evidence to show that Quest's stated reason was a pretext for unlawful discrimination. Thus, Brown's claims under the ADA and Title VII fail and Quest is entitled to summary judgment on those claims.").[2]

**B**

Next, the Court analyzes the Plaintiff's reasonable accommodation claim. Caterpillar levies several arguments as to why this claim fails. The Court, however, will focus primarily on whether the Plaintiff requested an accommodation (or alternatively, whether the need for an accommodation was obvious to Caterpillar).

The Plaintiff argues that Caterpillar was on notice that the Plaintiff required an accommodation, because the Plaintiff communicated to union representatives that her speech impediment impacted her ability to work at Station 1. She relies on the proposition that an employer fails to accommodate where "the employee indicate[s] to the employer that she has a disability and desires an accommodation." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005) But as the Court already found in Section IV(A), the Plaintiff provides no evidence

---

[2] The Plaintiff references both the *McDonnell-Douglas* and *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) frameworks in her response. *See Arnold v. United Airlines, Inc.*, 142 F.4th 460, 469 (7th Cir. 2025) (Under the 'holistic' approach, explicitly acknowledged in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), we "'look at the evidence in the aggregate to determine whether it allows an inference of prohibited discrimination.'"). While the Court's analysis centers on *McDonnell-Douglas*, the same analysis leads to summary judgment under *Ortiz's* holistic approach. Specifically, and consistent with the Court's analysis, the Plaintiff simply has provided no evidence that Caterpillar terminated the Plaintiff because of her disability, nor did Caterpillar have knowledge that the Plaintiff's speech impediment played a meaningful role in her refusal to work at Station 1. Thus, whether the Court operates under *McDonnell-Douglas* or the holistic, aggregate approach of *Ortiz*, the result remains the same: Caterpillar has carried its burden that the Plaintiff was not terminated because of her disability, and the Plaintiff has not offered evidence to raise a triable question of fact.

that she indicated to Caterpillar that her speech impediment impacted her performance at Station 1, let alone that she required an accommodation. And even the Plaintiff's request for additional training, as she testified to in her deposition, was wholly separate from her speech impediment. (D. 17-1 at 89:9–13) ("Q: But no amount of training is going to change your ability to speak to people while working Station 1, is it? A: [M]y speech and the … training … are two different things.").

Without evidence of communication, the Plaintiff's reasonable accommodation claim fails for the same reason as Claim One: Caterpillar has carried its burden that it was never aware that the Plaintiff required an accommodation, and the Plaintiff has provided no evidence to raise a triable issue of fact. Claim Two, then, is also subject to summary judgment. *See Fonseca v. Spraying Sys. Co.*, 466 F. Supp. 3d 834, 848 (N.D. Ill. 2020) (granting summary judgment on reasonable accommodation claim where the "Plaintiff refused to perform the work her supervisors asked her to do, yet she never explained why such work violated her permanent restrictions, never sought or obtained medical documentation supporting increased restrictions, and never requested or suggested other reasonable accommodations"); *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996) ("Because the University was never able to obtain an adequate understanding of what action it should take, it cannot be held liable for failure to make 'reasonable accommodations.' The judgment is therefore affirmed.").[3]

[3] The Court also notes that, undisputedly, the Plaintiff "represented to Caterpillar that she did not have any disability." (D. 17 at ECF p. 2). While this fact certainly is not dispositive in an ADA analysis, it does accentuate the Plaintiff's failure to communicate the impact of her speech impediment and her unspoken need for an accommodation.

**C**

Lastly, the Court addresses the Plaintiff's retaliation claim, which fails for the same reason as the Plaintiff's failure-to-accommodate claim. To establish a retaliation claim, the Plaintiff "must have asserted [her] rights under the ADA by either seeking an accommodation or raising a claim of discrimination due to [her] disability." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015). As the Court holds in Section B, the Plaintiff has not raised a triable fact that she requested an accommodation. And the Plaintiff did not "rais[e] a claim of discrimination due to her disability", *id.*, until after she was terminated. Accordingly, the Plaintiff's retaliation claim fails. *See Fonseca*, 466 F. Supp. 3d at 850 ("Moreover, as explained above, the evidence shows that Defendant fired Plaintiff because she refused to work the flow line and refused to comply with Defendant's policies. Plaintiff has offered no contradictory evidence to show that Defendant fired her because she requested a reasonable accommodation (indeed she offers no evidence to show that she ever requested a reasonable accommodation). As a result, Plaintiff's ADA retaliation claim fails.").

**V**

For the reasons set forth above, the Defendant's Motion for Summary Judgment (D. 17) is granted. The Clerk of Court shall enter judgment in favor of the Defendant on all counts, and close this case.

*It is so ordered.*

Entered on August 27, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE